UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ORLANDO DEMETRIUS
MITCHELL #948055,

                              Petitioner,

v.

MIKE BROWN,[1]

                              Respondent.

_____/

Case No. 1:19-cv-993

Hon. Sally J. Berens

**OPINION**

     This is a state prisoner's habeas corpus action brought under 28 U.S.C. § 2254. Petitioner Orlando Mitchell is incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility in Kincheloe, Michigan. Following a jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of second-degree murder, Mich. Comp. Laws § 750.317, and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. On October 20, 2014, the court sentenced Petitioner to 18 to 45 years' imprisonment for the second-degree murder conviction. In addition, the court imposed a consecutive sentence of two years for the felony-firearm conviction.

     On November 21, 2019, Petitioner timely filed his habeas corpus petition. Petitioner has consented to the conduct of all proceedings in this case, including entry of a final judgment and all post-judgment motions, by a United States Magistrate Judge.

---

[1] Because Petitioner has been transferred to the Kinross Correctional Facility, Mike Brown, the Warden at that facility, is substituted as the Respondent pursuant to Federal Rule of Civil Procedure 25(d) and the caption amended as set forth above.

Petitioner raises the following grounds for relief:

I.      Petitioner was denied the Due Process right to the effective assistance of counsel guaranteed by the federal and state constitution (U.S. Const. Am. VI Const. 1963, Art § 20) where trial counsel failed to negotiate a plea agreement, failed to investigate, failed to call supporting and expert witnesses; failed to perform and properly construct a defense that would have reflected more off [sic] the investigation prepared by the investigator that Petitioners [sic] counsel requested from the court to hire; where trial court abused its discretion to object medical doctor Rebecca Schreiner from testifying on behalf of the defense that which violated Petitioners [sic] Compulsory Process Clause.

II.     Whether Petitioner was deprived his due process right to self-representation even though he was forced with a counsels [sic] representation Petitioner repeatedly argued for a new attorney by raising an oral argument and written letters to the judge timely before trial and again during trial to have his counsel removed from representing him.

III.    Whether Petitioner's prefatory clause, operative clause and due process right to bear arms was violated under the Second Amendment when the Second Amendment protects individuals [sic] right to possess firearms unconnected with service in militia, and to use that firearm for traditionally lawful purposes, such as self-defense where the record shows all testimonial evidence that the Petitioner was verbally assaulted with a threat to lose his life and then physically assaulted in the face with a glass weapon by the victim before Petitioner used deadly force; subjectively leaving the court to abuse its discretion to not give a jury instruction to the jury or give a direct verdict when the evidence at trial was insufficient to prove premeditation.

IV.     Whether Petitioner was deprived the equal protection guaranteed of both U.S. Const. Amend. § 1 and Const. 1963, Art 1 § 2; for racial discrimination raised in a motion for relief from judgment and whether trial court abused its discretion to deprive [sic] Petitioner of a proper verdict had it provided a more adequate jury instruction that the jury could have determine once the evidence was proved to be insufficient to support the first degree murder charge to potentially leave the jury to reach a compromise verdict.

V.      Petitioner was deprived of a fair sentence when the lower courts [sic] abused its discretion when it did not give a compelling reason to upwardly depart from the minimum sentence of Petitioner's guidelines where there is [sic] reasons for the judge to consider a sentence at the low end of the guidelines.

(ECF No. 2 at PageID.7.)[2]

---

[2] The grounds set forth above are taken from Petitioner's Memorandum of Law in support of his petition, which repeat in slightly different form the grounds set forth in the petition. To the extent

Respondent has filed an answer to the petition (ECF No. 20), stating that it should be denied because the grounds are procedurally defaulted, not cognizable on habeas relief, and lack merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), the Court will deny the petition.

## I.  Factual background

The Michigan Court of Appeals set forth the essential facts of the case as follows:

This appeal arises from a fatal shooting that occurred at the Wayside West and the Y-bar in Kalamazoo, Michigan. Defendant had worked at the bar complex as a bouncer and as a bartender. On April 16, 2014, defendant was working as a bartender when he and the victim, Damian Tejada, engaged in a verbal altercation. According to defendant, he and the victim had difficulties in the past while defendant was working as a bouncer. Into the early morning hours of April 17, following the verbal altercation between defendant and the victim, defendant left the bar and testified that he went to his car where he retrieved a handgun. According to witness testimony, defendant left the bar area, and approached the victim in a "menacing" manner. As defendant approached the victim and words were exchanged, the victim took his beer bottle and slammed it into the head of defendant. Witnesses further testified that defendant then pulled out his gun and began pursuing the victim through the complex while firing shots. As the victim ran into the poker room, testimony revealed that defendant stood over the victim and "emptied his gun."

Defendant testified that he shot the victim in self-defense. Specifically, defendant stated that in one of his earlier encounters with the victim, the victim threatened to shoot up the bar complex. Defendant testified that he asked a bouncer to eject the victim, which led to the victim taking a beer bottle and smashing it into defendant's forehead. Concerned over the safety of himself and the bar patrons, defendant testified that he then reached into his pocket for his gun as defendant was fearful that the victim would carry out his threat. Defendant further testified that because of the blood flowing from his forehead he was not able to see so he kept shooting to "defend [his] life and defend [his] job and the people" that were at the bar complex.

A forensic examination of the body revealed that the victim had suffered from seven gunshot wounds, the cause of death being ruled a homicide. The forensic pathologist could not ascertain exactly which gunshot wound was the cause of death.

---

Petitioner's grounds in his petition are broader in scope than the above-quoted grounds, they will be addressed herein.

> The State argued for a conviction of first-degree murder. The jury convicted defendant of second degree murder and felony firearm. . . .

(Mich. Ct. App. Feb. 16, 2016 Op., ECF No. 21-9 at PageID.1218–19.) The trial court sentenced Petitioner as set forth above.

On direct appeal to the Michigan Court of Appeals, Petitioner raised the first and fifth issues in his habeas petition through counsel. (*Id.* at PageID.1249.) The court of appeals affirmed Petitioner's convictions in an unpublished opinion issued on February 16, 2016. (*Id.* at PageID.1218–23.)

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, raising the same claims he had raised in the court of appeals. (ECF No. 22-1 at PageID.1539–57.) By order entered October 26, 2016, the Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. (Mich. S. Ct. Order, *Id.* at PageID.1486.)

On March 31, 2017, Petitioner filed a motion for relief from judgment in the trial court. Petitioner re-cast his arguments, characterizing them as "jurisdictional arguments." First, he frames a "due process" claim as follows:

> [Petitioner] was deprived of his Constitutional and "Due Process" rights to a fair trial by jury when the trial court systematically excluded African American Jurors from the jury selection proscess [sic] "Voir Dire" which raises the "structural" error "Racial Discrimination in the selection of the Grand Jury", which the jury was confused by mixed instructions that deprived the defendant a "Not Guilty" verdict pursuant to MCL 780.972(1)(a) and the "Second Amendment" Constitution [sic].

He also makes two ineffective assistance of counsel arguments:

> [Petitioner] was deprived of his constitutional and "Due Process" rights before trial because of the ineffective assistance of trial counsel not objecting to the standards of due process or the racial discrimination of the entire jury selection process "Voir dire" that raises "Racial Discrimination in the selection of a Grand Jury"; "structural" error violation that can be raised anytime during the jury selection process, depriving [Petitioner of] a mistrial to have a non-bias "Voir dire" that

4

would have potentially rendered a jury verdict for [Petitioner] of "Not Guilty" pursuant to MCL 780.972(1)(a).

[Petitioner] was deprived of his constitutional and "Due Process" rights because of the ineffective assistance of appellate counsel for appellate counsel to not raise a "Dead-Bang winner" structural error issue on the first appeal by right that deprived defendant a [sic] automatic reversal issue "Racial Discrimination in the selection of a Grand Jury" claim that entitled his case to be a reversal for remand, depriving [Petitioner of ] a new trial to have a non-bias "Voir dire" that would have rendered a jury verdict of "Not Guilty," pursuant to MCL 780.972(1)(a).

(ECF No. 21-10 at PageID.1366–67.)[3]

The trial court denied Petitioner's motion for relief from judgment on September 26, 2017, based, in part, on Mich. Ct. R. 6.508(D)(3) and due to lack of merit. Petitioner filed a delayed application for appeal and motions to remand on November 17, 2017. (*Id.* at PageID.1340–56.) The Michigan Court of Appeals denied the motions for remand and denied the delayed application for leave to appeal because Petitioner failed to establish that the trial court erred in denying the motion for relief from judgment. (Mich. Ct. App. May 22, 2018 Order, *id.* at PageID.1339.) It denied Petitioner's motion for reconsideration on July 6, 2018. (Mich. Ct. App. Jul. 6, 2018 Order, *id.* at PageID.1338.)

Petitioner filed an application for leave to appeal to the Michigan Supreme Court on June 13, 2018. (*Id.* at PageID.1667–83.) The Michigan Supreme Court denied the application on February 4, 2019, because Petitioner failed to meet his burden of establishing entitlement to relief under Mich. Ct. R. 6.508(D). (Mich. S. Ct. Feb. 4, 2019 Order, ECF No. 22-2 at PageID.1665.) The court denied Petitioner's motion for reconsideration on May 28, 2019. (Mich. S. Ct. May 28, 2019 Order, *id.* at PageID.1664.)

---

[3] Discussion of these claims is subsumed in the discussion of ground IV below.

## II.  AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Analysis

#### A. Ineffective Assistance of Counsel

Petitioner asserts in ground I that he was denied his Sixth Amendment right to the effective assistance of counsel in several respects. This claim is governed by the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating claims of ineffective assistance of counsel. To establish this claim, petitioner must prove: (1) that counsel's performance fell below

an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, considering the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Because the standards under both *Strickland* and Section 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question [before the habeas court] is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1. Failure to Negotiate a Plea Agreement

Petitioner first contends that his counsel failed to seek a plea offer from the prosecutor. A criminal defendant is entitled to effective assistance of counsel during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same two-part inquiry from *Strickland* applies in claims

regarding the plea process. *Id.* A petitioner who claims that counsel was deficient for failing to negotiate a plea must show that: (1) counsel's performance was constitutionally deficient; and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pleaded guilty. *See Humphress v. United States*, 398 F.3d 855, 858–59 (6th Cir. 2005); *Moss v. United States*, 323 F.3d 445, 468 (6th Cir. 2003) (explaining that when a petitioner alleges that his counsel failed to explore plea negotiations, the petitioner must show both deficient performance and a reasonable probability that he would have pleaded guilty). Although counsel must provide competent assistance if the government offers a plea, a defendant has no constitutional right to a plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).

The Michigan Court of Appeals rejected this claim as follows:

Defendant's first claim of ineffective assistance of counsel rests on defendant's assertion that trial counsel failed to seek a plea offer. "[A]s at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591- 592; 852 NW2d 587 (2014). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent [representation]." *Lafler v Cooper*, ___US ___; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012) (addressing ineffective assistance of counsel in the context of ineffective advice that led to the rejection of a plea offer). Moreover, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v Frye*, ___ US ___; 132 S Ct 1399, 1408; 182 L Ed 2d 379 (2012).

Defendant argues that trial counsel "admitted that she and her client did not discuss what he would consider to be an amenable plea offer that she could take to the prosecutor. . . ." However, the record reveals that trial counsel stated, in response to an inquiry from the trial court as to whether there was a plea agreement in this matter:

Your Honor, I would indicate that my understanding from the policy of the Prosecutor's Office, specifically Mr. Getting, is that he wanted indication from defense that if there was an offer that had been extended, that would be something the defense would, in fact, be amenable to. This would kind of stop, prevent him from having to contact the victim's family and that whole situation. So, at this point, *I met with [defendant] and I was not -- I was not authorized,*

> *given any indication, that there was -- that he wanted me to go and*
> *meet with the Prosecutor.* So that did not happen. (Emphasis added).

The record therefore reveals that trial counsel did meet with defendant and indicated that defendant did not authorize her to meet with the prosecutor and therefore did not authorize trial counsel to extend a plea offer. How this fact becomes inflated into defendant's argument that trial counsel failed to pursue plea negotiations or counsel defendant on the perils of trial is, at best, confusing. However, even examining this issue as presented by defendant, we certainly cannot find that trial counsel failed to communicate a formal offer as required by *Frye*. Further, there is no indication from the record that defense counsel failed to advise defendant of a potential plea offer. Thus, it cannot be concluded that defense counsel was objectively unreasonable for failing to discuss with defendant "what he would consider to be an amenable plea" that could be taken to the prosecutor. In addition, to the extent that defendant argues that defense counsel failed to impress upon him the risks of going to trial, defendant has not established the factual predicate for this claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant has not established that defense counsel's performance fell below an objective standard of reasonableness. *Grant*, 470 Mich at 486.

Further, even assuming that the prosecutor would have made a formal offer and that defendant authorized defense counsel to negotiate a plea, and further assuming that trial counsel failed to properly advise defendant of such actions or the risks associated with trial, defendant has not established or even argued that:

> there is a reasonable probability that the plea offer would have been
> presented to the court (i.e., that the defendant would have accepted
> the plea and the prosecution would not have withdrawn it in light of
> intervening circumstances), that the court would have accepted its
> terms, and that the conviction or sentence, or both, under the offer's
> terms would have been less severe than under the judgment and
> sentence that in fact were imposed. [*Lafler*, ___ US at ___; 132 S Ct
> at 1385.]

Thus, defendant has also not met his burden of establishing prejudice. *Lockett*, 295 Mich App at 187; *Grant,* 470 Mich at 486. Accordingly, defendant is not entitled to relief on this issue.

(Mich. Ct. App. Feb. 16, 2016, ECF No. 21-9 at PageID.1219–21 (footnotes omitted).)

As in the state court, Petitioner fails to establish either prong of his ineffective assistance claim in his habeas petition. Petitioner argues that the state court should have found his trial counsel ineffective when it determined that she lied to the trial court about a plea policy that did not exist. (ECF No. 2 at PageID.20.) The Michigan Court of Appeals made no such finding.

Instead, it noted the parties' dispute as to whether the prosecutor had a plea policy requiring a defendant to initiate plea negotiations, but "found the existence of such a policy or lack thereof to be of no legal consequence." (*Id.* at PageID.1220 n.3.) Petitioner neither argues, nor cites authority showing, that the court erred in this regard. More importantly, the record, as to which there is no dispute, shows that Petitioner did not authorize trial counsel to meet with the prosecutor regarding a plea offer and that trial counsel did not fail to advise Petitioner of a plea offer because the prosecutor never extended one. (ECF No. 21-3 at PageID.486–87.) Thus, Petitioner cannot demonstrate deficient performance.

Even if Petitioner could demonstrate that counsel's performance was deficient, he wholly fails to address the prejudice prong of his claim. Petitioner's argument is based on nothing more than assumptions and speculation that, had his counsel initiated plea discussions, the prosecutor would have extended a plea offer, the plea offer would have been acceptable, Petitioner would have accepted the offer, the court would have accepted its terms, and the offer's terms would have been less severe than those of the judgment and sentence that the trial court imposed. *See Lafler v. Cooper*, 566 U.S. 156, 164 (2012). Petitioner bears the burden to justify relief on this claim, but he fails to make the required showing here. Therefore, this claim fails.

### 2.    Failure to Call Witnesses

Petitioner further contends that his trial counsel was ineffective for failure to call or present certain witnesses. Those witnesses included Dr. Rebecca Schreiner, a proposed expert who Petitioner asserts would have testified that he likely sustained a concussion from the force of the glass the victim smashed against Petitioner's head; Dr. Robert Prodinger, who treated Petitioner at the hospital following the incident; and an unnamed expert witness to opine on "the reasonable fear of a young black male raised and 'aged out' in foster care on the streets of Detroit." (Mich. Ct. App. Feb. 16, 2016, ECF No. 21-9 at PageID.1222.) While decisions as to what evidence to

11

present and whether to call certain witnesses are presumed to be a matter of trial strategy, the failure to call witnesses or present other evidence may constitute ineffective assistance when it deprives a petitioner of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

The Michigan Court of Appeals rejected the failure-to-call witness claims as follows:

Defendant first argues that he was deprived a substantial defense because, if defense counsel would have timely added Dr. Rebecca Schreiner as an expert and called her as a witness, she would have testified that defendant "likely sustained a concussion," which was a substantial defense. However, defendant's claim lacks a factual predicate and is simply unsupported by the record. Before trial began, defense counsel noted that "there was confusion" between her and the prosecutor, that she did not intend on calling an expert witness with respect to any medical issues, and that "there was no discussion that [defendant] said that he had a concussion or anything of that nature, he just reported having a loss of consciousness for one to two seconds." (Emphasis added). Thus, from the record, there is no support at all that Schreiner would have testified that defendant likely sustained a concussion. Defendant was responsible for establishing the factual predicate for his claim of ineffective assistance of counsel in this regard, *Hoag*, 460 Mich at 6, and he has not established as fact that Schreiner would have offered such testimony. Therefore, on the record before this Court, defendant has not proved his claim, *id.*, and has not established that defense counsel's performance was objectively unreasonable with respect to Schreiner. *Grant*, 470 Mich at 485-486. Even presuming defendant had suffered a concussion, defendant again fails to provide this Court with a basis for a finding that defendant was prejudiced by the lack of this evidence. *Grant*, 470 Mich at 485-486.

Defendant next argues that defense counsel was ineffective for failing to call the doctor who treated defendant at the hospital, Dr. Robert Prodinger, because he could have corroborated defendant's testimony with respect to the seriousness of his injuries. However, defense counsel stipulated to the facts that defendant went to the hospital and received treatment from Prodinger. Defense counsel also stipulated to the admission of the emergency report from the hospital. During closing arguments, defense counsel used this evidence to argue that defendant suffered a violent attack. Further, defendant and other witnesses testified regarding the nature of his injuries. Thus, the failure to call Prodinger did not deprive defendant of a substantial defense because he was able to and did, in fact, argue that he was victim of an attack, which prompted his use of lethal force. *Dixon*, 263 Mich App at 398. Moreover, nothing in the record supports that defense counsel's decision was anything but trial strategy. Defendant has not established that defense counsel's performance was objectively unreasonable with respect to Prodinger. *Grant*, 470 Mich at 485-486.

Defendant also argues that defense counsel was ineffective for failing to call an expert witness to testify about "the reasonable fear of a young black male raised and 'aged out' in foster care on the streets of Detroit." On appeal, defendant has failed to establish that such an expert even exists. Accordingly, he has not established the factual predicate for his claim. *Hoag*, 460 Mich at 6. Defendant also has not established that such evidence would have been admissible under MRE 702. Thus, because defendant has not established that the expert testimony would have been admissible, he has also failed to establish that it was objectively unreasonable not to have and call such an expert—if one even exists. This Court cannot base a finding of ineffective assistance of counsel on the failure of trial counsel to call an expert witness in a field where there currently exists no case law which identifies that such an area of expertise is acknowledged as accredited scientific evidence. Moreover, "[a]n attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Reasonable trial strategy may not want to highlight the fact that defendant was a young black male raised in "the streets of Detroit" in fear of the jury negatively stereotyping defendant. Defense counsel's decisions regarding which witnesses to call were a matter of trial strategy, *id.*, and defendant has failed to overcome the heavy burden of establishing ineffective assistance of counsel, *Lockett*, 295 Mich App at 187. Accordingly, defendant is not entitled to relief on this issue.

(*Id.* at PageID.1221–22.)

First, with regard to all three of these witnesses, Petitioner's failure to provide the Michigan Court of Appeals, as well as this Court, affidavits from Drs. Schreiner and Prodinger and from a proposed witness with expertise in the area of the reasonable fear of young black males from Detroit raised and "aged out" of foster care, precludes relief on these claims. Petitioner's conclusory allegations about what the witnesses would have said at trial to support his claim of ineffective assistance of counsel, without evidentiary support, provide no basis for habeas relief. *See Workman v Bell*, 178 F.3d 759, 771 (6th Cir. 1998).

Second, regarding Dr. Prodinger, Plaintiff fails to show that counsel's decision not to call him and to stipulate to the use of the medical records was anything other than sound trial strategy. As the Michigan Court of Appeals cogently explained, Petitioner was able to provide the same evidence that Dr. Prodinger would have given because the parties stipulated to the facts concerning Petitioner's treatment at the hospital and to admission of the hospital emergency report. Petitioner

13

also testified about his injuries and how they impacted his physical and mental functioning. He therefore fails to show that the absence of Dr. Prodinger's testimony deprived him of a substantial defense. Moreover, even assuming that counsel's decision not to call Dr. Prodinger constituted deficient performance, Petitioner fails to show that counsel's error had any effect on the judgment, that is, that the jury would have reached a different conclusion if they had heard Dr. Prodinger's testimony. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc). Petitioner has not met this burden, and thus cannot establish that the Michigan Court of Appeals' decision was unreasonable or that his counsel was ineffective for failing to present Dr. Prodinger's testimony.

Finally, as to the unnamed expert, Petitioner appears to suggest that the individuals who authored the letters of support attached to his petition as Appendix F could have provided expert testimony about the reasonable fear of a young black male raised in foster care on the streets of Detroit. (ECF No. 2 at PageID.32 (citing ECF No. 2-6).) As noted above, however, Petitioner failed to provide an affidavit supporting his claim, and his unsupported argument does not suffice to establish a basis for relief. Nonetheless, even if counsel had offered one of those individuals as an expert, Petitioner fails to cite any caselaw supporting the admissibility of expert testimony on the specified subject matter. As the Michigan Court of Appeals observed, no case even existed that "identifie[d] that such an area of expertise is acknowledged as accredited scientific evidence." (ECF No. 21-9 at PageID.1222.) Given the questionable admissibility of such  testimony, trial counsel's performance cannot be considered deficient. *See Piontek v. Palmer*, 546 F. App'x 543, 551 (6th Cir. 2013). Moreover, as the court of appeals aptly observed, counsel's decision not to call an expert may well have been a tactical decision to avoid the possibility of the jury negatively

14

stereotyping Petitioner. Petitioner fails to present evidence or argument to overcome the presumption that the counsel's decision not to call an expert might be considered sound trial strategy. *Strickland*, 466 U.S. at 689.

### 3.    Failure to Investigate

Petitioner also argued in his direct appeal that counsel was ineffective for failing to investigate his case. The Michigan Court of Appeals determined that Petitioner had abandoned the claim because it "merely set forth a string of legal citations with no factual support or reference to the record." (*Id.* at PageID.1219 n.1.)

Respondent contends that this claim is procedurally defaulted because Plaintiff failed to adequately brief the issue. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice*." Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a state procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

The pertinent rule is as follows: "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v. Kelly*, 231 Mich. App. 627, 640–41 (1998) (citing *Goolsby v. Detroit*, 419 Mich. 651, 655 n.1 (1984)). The Sixth Circuit has held that "Michigan's abandonment rule is an adequate and independent state-law basis for prohibiting federal review of a claim." *Theriot v. Vashaw*, 982 F.3d 999, 1005 (6th Cir. 2020) (citing *People v. Harris*, 261 Mich. App. 44, 50 (2004)).

To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). To show cause, Petitioner asserts that his trial counsel failed to provide the A&M Investigation Report prepared by investigator Jim Martemucci to his appellate counsel for use in his appeal. (ECF No. 24 at PageID.1780-81.) Once again, however, Petitioner fails to provide any factual support for this assertion. That is, he has not submitted an affidavit from his appellate counsel stating that she did not receive Martemucci's investigation report in time for the appeal or an affidavit from his trial counsel confirming that she did not provide the report to appellate counsel for use in the appeal. Petitioner's July 2018 grievance against his trial counsel and her response (ECF Nos. 2-4 and 2-5), do not support Petitioner's assertion that his trial counsel failed to provide the report to his appellate counsel.[4]

---

[4] Petitioner filed another grievance against his trial counsel claiming that she never informed appellate counsel about the outcome of the motion to suppress she filed. (ECF Nos. 2-1 and 2-3.) There is no meritorious issue here, however, because the prosecutor informed the trial court that, pursuant to a stipulation, the parties had agreed that the prosecutor would not present or introduce any statements by Petitioner that were the subject of trial counsel's motion to suppress. (ECF No. 21-5 at PageID.814.) There is no indication that Petitioner's challenged statements were presented at trial.

Moreover, even if Petitioner could establish cause, he cannot establish "actual prejudice" to excuse the default because Petitioner cannot show that the outcome of the trial would have been different. *Jones v. Bell*, 801 F.3d 556, 563 (6th Cir. 2015) (citing *Ambrose v. Booker*, 684 F.3d 638, 652 (6th Cir. 2012). Petitioner openly admits that his counsel hired an investigator who thoroughly investigated the case. Petitioner does not identify what counsel should have done to further investigate the case. His argument is that counsel called only five witnesses identified in the report and should have made better use of the investigative materials, but he does not state what, in his view, counsel should have done differently at trial based on Martemucci's report. Regardless, Petitioner's "[d]isagreement over trial strategy is not a basis for ineffective assistance of counsel." *Thomas v. Lecureux*, 8 F. App'x 461, 464 (6th Cir. 2001) (citing *Strickland*, 466 U.S. at 689).

Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). This requires a petitioner to show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. Petitioner has not made that showing.

Accordingly, this claim of ineffective assistance is procedurally defaulted.

### B.  Second, Third, and Fourth Grounds

Respondent contends that Petitioner's second and third claims, and parts of his fourth claim are unexhausted because he first raised them in his habeas petition. An unexhausted claim is procedurally defaulted if there is no available state-court forum in which to raise that claim. *See Gray*, 518 U.S. at 161–62. Review of such claims "is barred unless the prisoner can demonstrate

17

cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### 1.     Third Ground

Petitioner appears to argue that he raised his third claim—about whether his rights were violated under the Second Amendment and/or the trial court's failure to give an instruction that he had a right to use force after being assaulted—in his motion for relief from judgment, but the trial court misconstrued his claim as it was tied to his argument that African Americans were systematically excluded from the jury. (ECF No. 2 at PageID.24.) Given the lack of clarity of the claim (ECF No. 21-10 at PageID.1374), the trial court's failure to comprehend its substance is understandable. While it is questionable that Petitioner's motion for relief for judgment could be reasonably construed as asserting some or all of his third claim, the Court will construe it as such. If the petitioner's claim was "never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d)," "AEDPA deference no longer applies." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020). The petitioner's claim is thus reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

Petitioner's argument seems to be that, because Tejada attacked him, the jury's verdict violated his Second Amendment right to defend himself. A judge in the Eastern District of Michigan convincingly rejected a similar argument as follows:

> The Second Amendment to the United States Constitution provides: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." In *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed.2d 637 (2008), the Supreme Court held the Second Amendment protects an individual right "to possess and carry weapons in case of confrontation," unconnected with service in a militia. The court struck down a District of Columbia law effectively banning the possession of handguns in the home. *Id.* at pp. 628–632.
>
> More recently, in *McDonald* [*v. Chicago*, 561 U.S. 742 (2010)], the Court held the Second Amendment right recognized in *Heller* is "fully applicable to the States."

18

130 S. Ct. at 3026. A plurality of the *McDonald* court concluded the Second Amendment right applies to the states because it is "fundamental" to the American "scheme of ordered liberty" and is therefore incorporated in the due process clause of the Fourteenth Amendment. 130 S. Ct. at 3036, 3050. In a concurring opinion, Justice Thomas agreed with the plurality's characterization of the Second Amendment right as "fundamental." 130 S. Ct. at 3059.

Although it struck down the District of Columbia handguns ban, *Heller* recognized and affirmed certain traditional limitations on the right to bear arms. As the court noted, the Second Amendment does not grant "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, *supra,* 554 U.S. at 626. *Heller* identified an expressly nonexclusive list of "presumptively lawful regulatory measures," stating "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–627 and fn. 26*; accord*, *McDonald*, *supra*, 130 S. Ct. at 3047. In so doing, *Helle*r recognized that some individuals, presumably including felons and the mentally ill, may be "disqualified" from exercising Second Amendment rights. *Heller*, at pp. 626–627, 635.

Petitioner contends that his conviction violates the Second Amendment's guarantee of the right to keep and bear arms for self-defense. Obviously, however, the Supreme Court has never held that the Second Amendment justifies murder or conspiracy to commit murder, or that it creates a broader standard for self-defense [than] provided by state law. Petitioner fails to cite any case law for this proposition. "Like most rights, the Second Amendment right is not unlimited. It is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 570. For this reason, federal district courts have rejected similar habeas challenges on Second Amendment grounds. *Gieryk v. Ochoa*, 2010 U.S. Dist. LEXIS 134748, 2010 WL 5373857, at *1 (C.D. Cal. Nov. 2, 2010); *Saldinger v. Santa Cruz Cnty. Super. Ct.*, 2010 U.S. Dist. LEXIS 94347, 2010 WL 3339512, at *4 (N.D. Cal. Aug. 24, 2010).

Perhaps more to the point, even assuming the Second Amendment creates some sort of constitutional foundation for advancing a self-defense theory, Petitioner presented such a defense at trial. He testified to his version of the events, the trial court instructed the jury on self-defense, but the jury rejected it. Accordingly, Petitioner has not demonstrated entitlement to habeas relief on his claims.

*Sanders v. Rivard*, No. 4:12-cv-15122, 2014 WL 2931460, at *4–5 (E.D. Mich. June 30, 2014).

As in *Sanders*, Petitioner fails to identify any Supreme Court precedent providing for a

broader standard of self defense under state law. Petitioner presented a self-defense theory at trial,

and the trial court instructed the jury on the defense. Ultimately, the jury rejected the defense

because it determined that the evidence did not support the defense, as it was entitled to do as the finder of fact. Accordingly, this ground provides no basis for habeas relief.

### 2.     Second and Fourth Grounds

Petitioner fails even to address cause and actual prejudice for the procedural default of his second claim—denial of the right to self-representation—and the portion of his fourth claim that the trial court failed to give a "more adequate jury instruction" arising from his failure to present those claims to the state court. (ECF No. 2 at PageID.7.) He thus fails to rebut Respondent's showing that the claims are procedurally defaulted. Even if Petitioner's arguments could be construed as arguing that ineffective assistance of appellate counsel amounts to cause, Petitioner fails to demonstrate that appellate counsel was ineffective under *Strickland*. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288. Here, Plaintiff fails to show that his appellate counsel was ineffective for failing to present the self-representation and jury instruction issues as they were not clearly stronger than the issues counsel presented on direct appeal.

Moreover, Petitioner has not shown that failure to consider these claims would result in a fundamental miscarriage of justice, as he has not made a credible claim of actual "factual" innocence.[5] *Schlup*, 513 U.S. at 324.

Petitioner did present his racial discrimination and related ineffective-assistance-of-counsel claims, set forth in his fourth claim, in his motion for relief from judgment. The trial court held that Petitioner had not satisfied the good cause and actual prejudice requirements under Mich. Ct. R. 6.508(D)(3) and that his claims lacked merit. (ECF No. 21-10 at PageID.1427–30.) In considering Petitioner's claim that he was denied his right to be tried by an impartial jury drawn from sources reflecting a fair cross-section of the community, the trial court applied the three-part test from *Duren v. Missouri*, 439 U.S. 357 (1979), which requires that a defendant show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* at 364. After concluding

---

[5] Petitioner argues throughout his briefing that a missing DVR from Officer Emily Kane's vehicle would support his claim of actual innocence. (ECF No. 2 at PageID.43–44; ECF No. 24 at PageID.1784.) Officer Kane was one of the arresting officers. The prosecutor confirmed several times to the trial court that no DVR for Officer Kane's vehicle existed because she was not in her own vehicle at the time of arrest. (ECF No. 21-5 at PageID.816, 932–35.) Petitioner offers no evidence that, contrary to the prosecutor's representations, the DVR in fact existed. Petitioner claims that the DVR is crucial to a claim of actual innocence because Kane allegedly stated to Petitioner that "'[b]ecause of that stunt at the bowling alley, we set you up to kill Tejada.'" (ECF No. 2 at PageID.44.) In light of the evidence at trial, including Petitioner's own testimony, this incredible assertion defies logic. The evidence showed that Petitioner and Tejada, who was drunk, had a verbal exchange in which Tejada made a threat, prompting Petitioner to retrieve his gun from his vehicle. After Petitioner returned with the gun, Petitioner instructed employees to remove Tejada, and Tejada struck Petitioner with the beer glass or bottle. Petitioner then drew the weapon, pursued Tejada through the bar, and shot Tejada several times while he was on the ground. Petitioner fails to explain what, in this sequence, the police could have done to "set up" Petitioner to kill Tejada.

that Petitioner satisfied the first prong, the trial court determined that he failed to satisfy the remaining prongs. Regarding the second prong, the court wrote:

> To meet the second cross-section requirement, defendant must prove that the number of prospective black jurors in the jury pool is not fair and reasonable in relation to the African American population in Kalamazoo County. To evaluate this issue, Courts frequently employ the absolute disparity test. *Smith*, *supra* at 217. Absolute disparity is defined as "the difference between the percentage of a certain population group eligible for jury duty and the percentage of that group who actually appear in the venire." *Id.* (quoting *Ramseur v Beyer*, 983 F2d 1215, 1231 (CA3 1992). To calculate absolute disparity, courts subtract the percentile representation of that group in jury pools from the percentage present in the population. *Id.*

> Here, Defendant used the wrong equation to calculate the absolute disparity. Defendant used the following equation: the percentage of African Americans residing in Kalamazoo minus the percentage of African Americans summoned for his jury. Defendant argues that absolute disparity in his case is 7.3 percent (7.4 percent minus .10 percent).

> To properly calculate disparity, the Court subtracts the percentage of African Americans appearing in jury venires over a span of time from the percentage of African Americans residing in Kalamazoo. *See Hubbard*, *supra* at 476. That is, the equation does not focus solely on the number of African Americans present in the specific case at issue, but rather looks at the average number of African Americans that are part of the venires over a sample period. In this case, there is no way to know the total number of African Americans who appeared or were subpoenaed as the argument was not previously raised.

> In *People v Hubbard*, the court found adult African Americans comprised 7.4 percent of Kalamazoo County's population. The court also found that African Americans comprised 3.3 percent to 4 percent of the Kalamazoo Circuit Court venires between July 10, 1990 and July 9, 1991. *Id.* Using those figures, the court found the absolute disparity to be 3.4 percent (7.4 percent minus 4 percent) to 4.1 percent (7.4 percent minus 3.3 percent). *Id.* Based on that calculation, the court concluded that "[a]n absolute disparity falling in this range does not constitute substantial underrepresentation for Sixth Amendment fair-cross-section purposes." *Id.* (citing *Ramseur v Beyer*, 983 F2d 1215, 1232 & n. 18 (CA3 1992)).

> Here, Defendant cannot sustain his motion for relief when he miscalculated the disparity. Besides using the wrong equation, Defendant relied on demographic information from 1996. As Defendant's trial took place in September 2014, it would be more appropriate to use the U.S. Census Bureau data from 2010 to calculate the actual disparity.

> For disparity to reach the level of unfair and unreasonable underrepresentation, "courts have generally required an absolute disparity of more than 10 percent." *People v Byrant*, 491 Mich 575, 604; 822 NW2d 124, 138; *see also Smith*, *supra* at 217. Therefore, even if this Court used the demographics Defendant puts forth, the 7.3 percent disparity does not constitute unfair or unreasonable underrepresentation.

(*Id.* at PageID.1428–29.) As for the third prong, the court wrote:

> To satisfy the third requirement of the cross-section test, Defendant must show that underrepresentation of African American jurors was so systematic that it was "inherent in the particular jury-selection process utilized." *Duren*, *supra* at 336. A defendant cannot establish systematic exclusion by pointing to "one or two incidents of a venire being disproportionate." *People v Hubbard*, 217 Mich App 459, 481; 533 NW2d 493, 504 (1996) (citing *Ford v Seabold*, 841 F2d 677, 681(CA6, 1988). There is no evidence in the record establishing systematic failure to the extent required. Furthermore, the Court can take judicial notice that the 9th Circuit Court has engaged in various efforts and research studies within the past ten years, to be sure the Court was complying with best practices in jury selection. However, again, as the issue was not previously raised by Defendant evidence was not presented by court staff to define the court's practices.

(*Id.* at PageID.1429–30.)

Petitioner fails to show that the trial court's decision was contrary to, or an unreasonable application of, clearly established federal law. First, as to the second prong, the trial court accurately observed that Petitioner used an incorrect method of calculating disparity to determine whether representation of African Americans in Kalamazoo County jury venires met the fair-cross-section requirement. As the trial court noted, the absolute disparity method measures the percentage of a particular group in jury venires over a span of time rather than in the specific case at issue. *See Berghuis v. Smith*, 559 U.S. 314, 323 (2010) (noting that that trial court determined "absolute disparity" based on the six months leading up to the petitioner's trial); *United States v. Smith*, No. 19-324, 2022 WL 425059, at *23 (D.D.C. Feb. 11, 2022) (noting that "the representativeness of a single venire (or the precursor pools from which the venire is drawn, *e.g.*, the qualified two-week pool or the directed-to-report list) does not, itself, dictate whether or not the second *Duren* prong is met"). The court also properly found that Petitioner's calculation was

unreliable as it was based on demographic information from 1996, when it should have been based on U.S. Census Bureau data from 2010—the same decade as Petitioner's trial. Moreover, the trial court correctly observed that, even using the 7.3 percent disparity resulting from Petitioner's use of the wrong equation and out-of-date demographic information, such disparity is substantially below levels other courts have found insufficient to constitute unfair or unreasonable underrepresentation. *See*, *e.g.*, *United States v. Quiroz* 137 F. App'x 667, 670 (5th Cir. 2005) (finding 11 percent disparity too statistically insignificant to support a prima facie case of a fair-cross-section violation).

Finally, the trial court's finding as to the third prong was completely reasonable; Petitioner failed to present evidence of systematic exclusion of African Americans from the jury pool. Petitioner points to no such evidence here in his supporting brief. Instead, he argues that the fact that only one African American juror (whom Petitioner later moved to dismiss) was selected as a juror supports his fair-cross-section claim. (ECF No. 2 at PageID.57.) This circumstance does not prove systematic exclusion of African Americans from the jury pool. Moreover, Petitioner's assertion that racial discrimination affected the verdict because the racial composition of the jury did not correspond to the racial composition of the venire lacks merit. As the Supreme Court has observed, "[d]efendants are not entitled to a jury of any particular composition." *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975).

Because the trial court ultimately rejected Petitioner's fair-cross-section claim, it reasonably rejected Petitioner's ineffective assistance of trial and appellate counsel claims, which Petitioner raised to establish good cause for failing to raise the issue on appeal. As to trial counsel, the court observed that there was no evidence suggesting that the jury selection process systematically excluded African American jurors. (*Id.* at PageID.1431.) Regarding appellate

24

counsel, the court found that Petitioner failed to establish prejudice because counsel exercised her judgment to exclude a fair-cross-section claim that would likely fail. (*Id.* at PageID.1433.) Both findings were well supported and based on a reasonable application of *Strickland*. Contrary to Petitioner's assertion, his trial counsel's question to prospective jurors during voir dire about whether they had a problem with Petitioner because he was an African American man did not indicate that she "had some sort of knowledge" about racial discrimination. (ECF No. 2 at PageID.55 (citing ECF No. 21-3 at PageID.450).) Rather, counsel's question clearly was intended to identify and eliminate any potential bias to ensure that Petitioner had a fair and impartial jury, thus indicating that Petitioner received effective representation.

Accordingly, Petitioner is not entitled to habeas relief on his fourth claim.

## C.    Sentencing Issue

In his fifth claim, Petitioner contends that he was denied a fair sentence because the trial court failed to give a compelling reason to depart upward from the minimum sentence of Petitioner's guidelines range, and there were reasons to consider a sentence at the low end of the guidelines. The Michigan Court of Appeals rejected this claim as follows:

> Defendant next argues that the trial court abused its discretion by failing to depart below the minimum sentencing guidelines range or sentence defendant at the "low end" of the guidelines. MCL 769.34(10) clearly provides that, "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence."
>
> Here, defendant was sentenced within the recommended minimum guidelines range. On appeal, defendant does not challenge the scoring of these guidelines or the accuracy of the information relied upon in determining his sentence. Thus, MCL 769.34(10) requires us to affirm defendant's sentences. MCL 769.34(10); *Babcock*, 469 Mich at 261.

(Mich. Ct. App. Feb. 16, 2016, ECF No. 21-9 at PageID.1222 (footnote omitted).)

25

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Here, the Michigan Court of Appeals considered and rejected Petitioner's state-law argument. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at, 76; *Estelle*, 502 U.S. at 67-68. The decision of the state courts on a state-law issue is binding on a federal court. *See Johnson v. United States*, 559 U.S. 133, 138 (2010); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Moreover, so long as a sentence is imposed within statutory limits and was authorized by law, it provides no basis for habeas relief. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also Stowe v. Klee*, No. 2:15-CV-12057, 2015 WL 3745207, at *3 (E.D. Mich. June 15, 2015) ("Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law." (citing *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001))). Petitioner's sentence was authorized by law and was within the statutory limits. Therefore, this claim provides no basis for habeas relief.[6]

---

[6] Petitioner argues that the Michigan Court of Appeals erroneously applied the Supreme Court's decision in *People v. Lockridge*, 498 Mich. 358 (2015). (ECF No. 2 at PageID.62.) This argument is incorrect. The court of appeals observed in a footnote that *Lockridge* struck down the

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. However, although Petitioner has failed to demonstrate that he is in

---

"substantial and compelling reason" requirement in Mich. Comp. Laws 769.34(3), which refutes Petitioner's argument that the trial court failed to give a substantial and compelling reason for departing upward. (Mich. Ct. App. Feb. 16, 2016, ECF No. 21-9 at PageID.1222 n.4.)

custody in violation of the Constitution and has failed to make a substantial showing of a denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

For the foregoing reasons, Petitioner's habeas petition and a certificate of appealability will be denied. A separate order and separate judgment will enter.

Dated: August 23, 2022                                    /s/ Sally J. Berens
                                                         SALLY J. BERENS
                                                         U.S. Magistrate Judge

28